

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00392-CV

Sherry **CAGLE** n/k/a Sherry Schwartz,
Appellant

v.

Mario **CUELLAR** and Norma Cuellar,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-01910
Honorable Laura Salinas, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 27, 2022

AFFIRMED

Appellant Sherry Cagle n/k/a Sherry Schwartz ("Schwartz") appeals the trial court's judgment quieting title to two properties in favor of appellees, Mario Cuellar and Norma Cuellar ("the Cuellars"). On appeal, Schwartz challenges the legal and factual sufficiency of the evidence supporting several of the trial court's findings of fact and conclusions of law. She argues she is entitled to judicial foreclosure of the properties because she conclusively established her right to enforce certain promissory notes and deeds of trust on the properties. She also challenges the trial court's award of attorney's fees to the Cuellars. Because we conclude the evidence is legally and

factually sufficient and the trial court did not err in awarding the Cuellars attorney's fees, we affirm the trial court's judgment.

## BACKGROUND

This suit involves a dispute over two residential properties located in San Antonio, Texas. Mario Cuellar is the record owner of one disputed property; his aunt, Norma, is the record owner of the other disputed property. In December 2017, Schwartz initiated a nonjudicial foreclosure action against the Cuellars on both properties pursuant to deeds of trust, which she claimed were secured by promissory notes. According to Schwartz, she had been awarded rights to these financial instruments in December 2014 after she divorced her husband, James Cagle. She and Cagle had owned Hannah Funding, LLC, which was the original holder of the promissory notes and beneficiary of the deeds of trust.

To stop Schwartz's foreclosure action, the Cuellars filed this separate, underlying suit against Schwartz, alleging numerous claims and seeking declaratory and injunctive relief. In their suit, the Cuellars alleged Schwartz was unlawfully attempting to collect payment on fully paid notes to her then husband Cagle; the Cuellars alleged the notes had been paid with laundered drug money. The Cuellars asserted their relative, Mario Alfonso Cuellar, had conspired with Cagle to launder drug money through a fraudulent real estate transaction scheme. As part of this scheme, Mario Alfonso paid Cagle cash payments for the properties and gave the Cuellars the properties as gifts. Cagle accepted the cash payments and used Hannah Funding, LLC as a straw creditor on the financing instruments to make the transactions look like legitimate credit and purchase transactions. Cagle, on behalf of Hannah Funding, LLC, also executed releases of lien to the deeds of trust, and the releases were recorded in the Bexar County deed records. The Cuellars further alleged Schwartz knew the notes had been fully paid during her divorce proceeding, but nevertheless, she pursued collecting on the notes after her divorce.

The Cuellars amended their petition, adding new claims and Hannah Funding, LLC and Cagle as defendants. Schwartz then filed a denial and counterclaim seeking to foreclose on the subject notes and deeds of trust. A two-day bench trial occurred, and the trial court heard testimony from several witnesses, including the Cuellars, Schwartz, Cagle, and Mario Alfonso. The trial court ultimately entered a judgment quieting title in favor of the Cuellars and awarding the Cuellars attorney's fees. The trial court then signed findings of fact and conclusions of law. Schwartz now appeals.

## ANALYSIS

### *Sufficiency of the Evidence*

Schwartz challenges the legal and factual sufficiency of the evidence by attacking several of the trial court's findings of fact and conclusions of law. Specifically, Schwartz argues there was no evidence, or alternatively the evidence was insufficient, to support the trial court's findings and conclusions indicating the notes have been paid in full. She also argues the trial court's findings and conclusions relating to the divorce decree are based on the Cuellars' impermissible collateral attacks. Finally, she asserts the trial court's conclusions are conclusory, specifically those stating the Cuellars complied with all the conditions precedent necessary for recovery and Schwartz's actions constituted an unfair debt collection practice. We will address each of Schwartz's arguments separately.

### *Standard of Review*

In an appeal from a bench trial, we give the trial court's findings of fact the same weight as we give a jury verdict. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). However, "[w]hen the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.); *see Teal Trading & Dev., LP v. Champee*

*Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 582 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020). We judge a trial court's findings of fact by the same appellate standards we do a jury verdict. *Tex. Outfitters Ltd.*, 572 S.W.3d at 653. This means when we review the legal sufficiency of the evidence, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* We will reverse the judgment only if: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Comp. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). And when a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We consider all the evidence, but we will not reverse the judgment unless "the evidence which supports the [trial court's] finding is so weak as to [make the finding] clearly wrong and manifestly unjust." *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied). We apply these standards while remaining mindful we are not a fact finder, who is the sole judge of witnesses'

credibility and the weight afforded their testimony. *City of Keller*, 168 S.W.3d at 819–20; *Martime*, 971 S.W.2d at 407.

Moreover, a trial court's conclusions of law are reviewed de novo. *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). Under this standard, we are not bound by the trial court's legal conclusions, but we will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Fulgham*, 349 S.W.3d at 157–58. So long as the controlling findings of fact will support a correct legal theory, incorrect conclusions of law will not require reversal. *Id*. Conclusions of law will be reversed only if they are erroneous as a matter of law. *Id.*

### *Payment of the Notes*

According to Schwartz, the Cuellars did not present any evidence showing the notes were fully paid. Instead, the Cuellars admitted the notes were fraudulent, and the only evidence supporting the trial court's findings indicating the notes were fully paid came from testimony provided by Cagle. Schwartz contends Cagle's testimony, however, was inadmissible because the Cuellars failed to plead payment as an affirmative defense as required by Texas Rule of Civil Procedure 95.

We begin our analysis by determining whether Cagle's testimony regarding payment of the notes was inadmissible. Payment is an affirmative defense and must be affirmatively pled. TEX. R. CIV. P. 95; *Sugar Land Prop., Inc. v. Becnel*, 26 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2000, no pet.). If a party wishes to prove payment, he must affirmatively plead payment and file an accounting of the payments. TEX. R. CIV. P. 95. This rule applies to "payments made by the defendant to the plaintiff, not by third parties." *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 5 (Tex. App.—Waco 2007, pet. denied) (rejecting application of Rule 95 to payments made by third parties). Here, Cagle's testimony did not concern payments made by any

of the defendants to Schwartz. Accordingly, Schwartz's reliance on the rule is misplaced and the Cuellars were not barred from presenting Cagle's testimony explaining the notes had been fully paid. *See Imperial Lofts*, 245 S.W.3d at 5.

Turning to the evidence produced at trial, Cagle testified Jose Vasquez contacted him on behalf of Mario Alfonso to purchase two properties for his son and sister (the Cuellars). Cagle testified his company Hannah Funding, LLC advanced money for the purchase of the properties, and Vasquez, on behalf of Mario Alfonso, paid the notes. Cagle further testified he executed a release on the notes after Vasquez fully paid them. The trial court also heard testimony from Mario Alfonso confirming this transaction and detailing he used drug trafficking money to purchase the properties for the Cuellars. This evidence constitutes more than a mere scintilla of evidence establishing the notes had been fully paid prior to Schwartz's nonjudicial foreclosure action; the evidence also would enable a reasonable and fair-minded factfinder to reach the verdict under review and is not so weak as to make the findings clearly wrong or manifestly unjust. Accordingly, the evidence is legally and factually sufficient to support the trial court's findings indicating the notes were paid in full, and the trial court did not err in its conclusions relating to the same.

*Divorce Decree*

As part of her sufficiency challenge, Schwartz contends the trial court's findings and conclusions relating to the divorce decree are improper because they are based on impermissible collateral attacks. Specifically, Schwartz contends the Cuellars collaterally attacked her divorce decree when they filed their suit, particularly their suit for declaratory relief, against her.

A collateral attack is an attempt to avoid the effect of a judgment "in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). In general, collateral attacks on a final judgment are disallowed,

and only a void judgment may be collaterally attacked. *Id.* at 345–46. In no instances may a party use a declaratory judgment action to collaterally attack, modify, or interpret a prior judgment. *Martin v. Dosohs I, Ltd.*, 2 S.W.3d 350, 353–54 (Tex. App.—San Antonio 1999, pet. denied).

Here, the trial court made the following findings relating to the divorce decree. It found: (1) Hannah Funding, LLC was not a party to the divorce proceeding; (2) the divorce decree was signed on May 1, 2014; (3) Schwartz was informed the notes had been fully paid during the divorce proceeding; and (4) Cagle did not initially identify the notes as divorce assets during the divorce proceeding. The trial court also concluded Schwartz received no interest in the notes because the notes belonged to Hannah Funding, LLC, which was not a party to the divorce proceeding. Contrary to Schwartz's assertion, these findings and conclusions are not based on an attempt by the Cuellars to collaterally attack the divorce decree. The primary purpose of the Cuellars' request for declaratory relief was to quiet title to two properties and to determine the parties' rights with respect to the financial instruments—not to modify or interpret the divorce decree. *See id*. We therefore overrule Schwartz's challenges to the trial court's findings and conclusions concerning the divorce decree.

### *Public Policy*

Next, without identifying a specific finding, Schwartz asserts the trial court's "finding for Appellees" violates public policy because the judgment enforces an illegal transaction. This court has recognized when a party challenges the sufficiency of findings of fact and conclusions of law in a nonjury bench trial, the party "should direct his attack on the sufficiency of the evidence at *specific* findings of fact, rather than at the judgment as a whole." *Teal Trading*, 534 S.W.3d at 581 (emphasis added). Here, the trial court made forty-six findings of fact, and Schwartz's argument amounts to an attack on the judgment as a whole. Accordingly, beyond the specific findings Schwartz has previously challenged, we decline to determine what additional findings Schwartz

attacks in her global assertion. To the extent Schwartz challenges the trial court's conclusion indicating the Cuellars were not a party to any criminal conduct or engaged in a criminal transaction,[1] this conclusion is not erroneous as a matter of law because the trial court's findings and the evidence presented at trial support it. *See Fulgham*, 349 S.W.3d at 157–58. Here, the trial court found the Cuellars had no knowledge of the dealings by and between Mario Alfonso and Cagle regarding the source of the funding for the notes. We therefore overrule Schwartz's argument.

*Breach of Contract and Unlawful Debt Collection Act*

Finally, as her last sufficiency point, Schwartz challenges the following trial court's conclusions:[2]

- "[The Cuellars] had complied with all conditions precedent for recovery against [] Schwartz for breach of contract" and

- Schwartz's foreclosure action constituted an unlawful debt collection practice.

As to the first conclusion, Schwartz argues there was no evidence showing she breached a contract, and therefore, the trial court erred in its conclusion. This conclusion is immaterial to the judgment, and we will uphold a conclusion of law so long as the judgment can be sustained on any legal theory supported by the evidence. *Id.* Here, the trial court's judgment declared the Cuellars as the record owners of the properties, and as detailed above, the trial court heard sufficient evidence indicating the notes against the properties had been fully paid entitling the Cuellars to clear title. There is nothing in the trial court's judgment against Schwartz for breach of contract.

---

[1] Schwartz identifies this conclusion of law as "finding of fact number 16." We note, however, finding of fact number 16 does not mention anything about whether the Cuellars were parties to a criminal transaction. Instead, conclusion of law number 16 provides the Cuellars were not a party to any criminal conduct. We therefore construe Schwartz's argument as a challenge to the trial court's conclusion.

[2] In her brief, Schwartz identifies these conclusions as findings of fact 11 and 17, but a review of the clerk's record shows they are conclusions.

Accordingly, because the evidence supports the judgment, this conclusion does not require reversal. *See id.*

As to the second conclusion, section 392.304(a)(8) of the Texas Finance Code makes it unlawful either to mispresent the character, extent, or amount of a consumer debt or to misrepresent a consumer's debt status in a judicial proceeding. TEX. FIN. CODE ANN. § 392.304(a)(8). Here, the trial court heard testimony from Cagle, who testified he executed releases of lien for the properties after he received payments from Vasquez on behalf of Mario Alfonso. Cagle further testified he told Schwartz he had the copies of the releases of liens in his office during the divorce proceeding. The court also heard evidence from Schwartz's attorney, who testified Schwartz hired him to initiate the foreclosure proceedings against the Cuellars on the two properties. Schwartz's attorney further testified when he began investigating the history of the properties, Cagle told him the notes had been fully paid, but Cagle did not produce any records showing the payments or releases, so Schwartz's attorney proceeded with the foreclosure action. This is ample evidence to support the trial court's conclusion Schwartz's foreclosure action constituted an unlawful debt collection practice. Schwartz, however, asserts the Cuellars cannot be consumers under section 392.304(a)(8) because their entire claim is premised on their allegation there is no debt. This argument ignores the fact the Cuellars pled and introduced evidence on several theories of recovery, including payment of the notes. Accordingly, we overrule Schwartz's challenges to the trial court's conclusions regarding breach of contract and unfair debt collection practices.

### *Judicial Foreclosure*

Schwartz argues she conclusively established her right to a judicial foreclosure, and as a result, the trial court erred by failing to enforce the promissory notes and deeds of trust. To be entitled to a judicial foreclosure, a party must establish the existence of a debt and he is entitled to

recover it. *De La Garza v. Bank of N.Y. Mellon*, No. 02-17-00427-CV, 2018 WL 5725250, at \*7 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.) (citing TEX. R. CIV. P. 309); *see also Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.) ("To obtain a judicial foreclosure, Bank of America was required to demonstrate that the note was a purchase money note, that some part of the purchase money is due and unpaid, and that the property subject to the lien is the same property on which it seeks to enforce the lien."). Here, Schwartz's argument ignores the fact the trial court heard conflicting evidence regarding whether the promissory notes had been fully paid and thus, whether a debt existed and whether Schwartz was entitled to recover. Accordingly, Schwartz's argument is without merit, and we hold the evidence did not conclusively establish Schwartz's right to a judicial foreclosure. We therefore overrule this argument.

### Attorney's Fees

Schwartz argues the trial court erred when it awarded the Cuellars' attorney's fees. According to Schwartz, none of the Cuellars' claims, including their declaratory judgment action, breach of contract action, or unfair debt collection action, support an award of attorney's fees.

We review a trial court's award of attorney's fees for an abuse of discretion. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). Under this standard, "a judgment awarding attorney's fees can be affirmed on any theory of law applicable to the case and supported by the record." *Interest of Z.O.M.*, 613 S.W.3d 638, 642 (Tex. App.—San Antonio 2020, no pet.) (internal quotation marks omitted); *McDowell v. McDowell*, 143 S.W.3d 124, 131 (Tex. App.—San Antonio 2004, pet. denied).

Here, the Cuellars specifically pled several claims, including statutory and common law violations of the unfair debt collection, a request for declaratory relief regarding their rights in relation to the deeds of trust, notes, and properties, and a breach of contract action; the Cuellars also sought attorney's fees. The trial court in its judgment awarded the Cuellars $72,327.50 in

attorney's fees for representation in the trial court; $60,000 for representation through appeal to the court of appeals; and $30,000 for representation through an appeal to the Texas Supreme Court; the trial court did not identify the grounds it relied on for awarding the Cuellars' attorney's fees.

Here, the Cuellars' declaratory judgment action supports the award of attorney's fees. Under the Uniform Declaratory Judgments Act, the court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Schwartz contends, however, because the Cuellars "asserted claims for a suit to quiet title and trespass to try title," attorney's fees are not available in such suits. According to Schwartz, the Cuellars are improperly using their declaratory judgment action to recover attorney's fees that are otherwise impermissible.

Schwartz is correct that attorney's fees are not recoverable in a trespass to try title suit or a suit to quiet title. *See Medina v. Bowers*, No. 04-17-00035-CV, 2018 WL 6793851, at *4 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op.); *Sadler v. Duvall*, 815 S.W.2d 285, 293–94 (Tex. App.—Texarkana 1991, writ denied). This court has recognized "a party may not recover attorney's fees under the UDJA when the only issues, aside from attorney's fees, concern trespass to try title or clearing of title." *Medina*, 2018 WL 6793851, at *4. Additionally, a party cannot use a declaratory judgment action to obtain attorney's fees that are not otherwise authorized. *Bexar Cnty. Appraisal Rev. Bd. v. First Baptist Church*, 846 S.W.2d 554, 561 (Tex. App.—San Antonio 1993, writ denied). In this case, however, the Cuellars' declaratory judgment action is more than a pure title determination; it seeks to determine the rights of the parties with respect to promissory notes and deeds of trust in addition to the properties. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App.—Austin 2006, pet. denied) (reasoning declaratory judgment action seeking adjudication of validity of deeds of trust constituted more than title action and supported

award of attorney's fees). Accordingly, we hold the trial court acted within its discretion in awarding the Cuellars' attorney's fees, and we overrule Schwartz's final issue.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice