

## NUMBER 13-21-00203-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **D. WILSON CONSTRUCTION COMPANY,** | **Appellant,** |
| **v.** | |
| **FILEGONIA SITE CONTRACTORS, LLC,** | **Appellee.** |

### On appeal from the 93rd District Court
of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

This case arises from the denial of a motion to compel arbitration. By two issues, appellant D. Wilson Construction Company (DWCC) contends the trial court abused its discretion by: (1) refusing to compel arbitration between DWCC and appellee Filegonia Site Contractors, LLC (Filegonia), and (2) refusing to stay the litigation between the parties. We reverse and remand.

## I.   BACKGROUND

### A.   Underlying Facts

DWCC is the general contractor for a construction project for the Pharr-San Juan-Alamo (PSJA) Aquatic Facility owned by the City of Pharr, Texas. DWCC contracted with Filegonia to be a subcontractor on the project. The parties signed a subcontract which provided that Filegonia would receive $1.475 million for its services. The subcontract also included an arbitration provision, which set forth the following agreement:

> ARBITRATION: Except as otherwise provided herein, any controversy, claim, or dispute between [DWCC] and [Filegonia] arising out of or related to the Subcontract, the breach thereof, or any other issue related to the Project, shall at [DWCC]'s sole option and discretion be resolved by arbitration in accordance with the most current edition of the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

The subcontract further provided that the subcontract would be enforceable under the Federal Arbitration Act (FAA), agreeing that "[t]he arbitration rights set forth herein shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. 1, et seq., the parties agreeing that the transactions contemplated hereunder will have an effect on interstate commerce."

### B.   The Litigation

In March 2021, Filegonia sued DWCC and the City of Pharr, contending it was owed money under the subcontract for services performed. Filegonia asserted breach of contract and unjust enrichment claims, claiming it was owed $450,426.07.

DWCC filed a motion to compel arbitration and to stay litigation on April 5, 2021. Filegonia filed a response to the motion, arguing that arbitration should not be compelled

because: (1) the FAA did not apply because the transaction did not involve interstate commerce; (2) the agreement was unconscionable; and (3) the agreement lacked consideration and was illusory. The trial court held a hearing on the motion to compel arbitration on May 14, 2021. After hearing arguments of counsel and taking the matter under advisement, the trial court denied the motion to compel arbitration and stay litigation on June 8, 2021. DWCC subsequently filed this interlocutory appeal.[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

## II.  MOTION TO COMPEL ARBITRATION

### A.  Standard of Review and Applicable Law

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id.* "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id.*; *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008).

Under the FAA, a presumption exists in favor of agreements to arbitrate. *See Henry*, 551 S.W.3d at 115 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding)). A "party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope

---

[1] The other defendant, the City of Pharr, is not a party to this appeal.

of that agreement." *Id*. (citing *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014)). When the party that seeks to compel arbitration meets this burden, the burden shifts to the opposing party, who must prove an affirmative defense to avoid arbitration. *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002) (per curiam) (orig. proceeding)).

Courts determine whether an enforceable agreement to arbitrate exists by applying "ordinary principles of state contract law." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding)). Generally, "parties must sign arbitration agreements before being bound by them." *In re Rubiola*, 334 S.W.3d at 224. Whether an agreement to arbitrate is enforceable is a question of law that we review de novo. *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

## B.    Analysis

The record shows that DWCC and Filegonia were signatories to a subcontract which provided that Filegonia would receive $1.475 million for its services rendered. The subcontract included an arbitration provision. Filegonia's lawsuit contends that DWCC owes it monies promised under the subcontract. Based on the record before us, we conclude that DWCC established the existence of a valid arbitration agreement.[2] *See*

---

[2] Neither party disputed the existence of an arbitration agreement, either.

4

*Henry*, 551 S.W.3d at 115; *Venture Cotton Coop.*, 435 S.W.3d at 227. We further conclude, based on the pleadings and record, that this dispute falls within the scope of the arbitration agreement. *See Perry Homes*, 258 S.W.3d at 598 & n.102.

The burden thus shifted to Filegonia to prove an affirmative defense to avoid arbitration. *See Henry*, 551 S.W.3d at 115; *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015). In its response to the motion to compel arbitration and the related hearing, Filegonia asserted three affirmative defenses to arbitration: (1) the FAA could not apply because the transaction between DWCC and Filegonia did not involve interstate commerce; (2) the agreement was unconscionable; and (3) the agreement lacked consideration and was an illusory promise. Because the trial court did not explain in its order which defense it relied upon to deny arbitration, we address each in turn. *See U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 847–48 (Tex. App.—Corpus Christi–Edinburg 2011, pet. denied).

### 1. Interstate Commerce

Filegonia's first defense asserted that the FAA could not apply because the transaction between the parties did not involve interstate commerce. At the hearing, Filegonia contended that there was "no evidence" to "support a finding of the application of interstate commerce."

"The FAA does not require a substantial effect on interstate commerce; it only requires that commerce be involved or affected." *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex. App.—El Paso 2009, orig. proceeding) (citing *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding) (per curiam)). If the

5

parties expressly choose for the FAA to govern their arbitration agreement, the agreement should be enforced regardless of the parties' nexus to interstate commerce. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA."); *see also Unit Tex. Drilling, LLC v. Morales*, No. 13-10-00247-CV, 2010 WL 2968046, at * 3 (Tex. App.—Corpus Christi–Edinburg July 29, 2010, pet. denied) (mem. op.).

Thus, it is "unnecessary for this Court to examine whether the parties before this Court were involved in interstate commerce" because "[t]he express language in the agreement controls." *See In re ReadyOne Indus., Inc.*, 294 S.W.3d at 769; *see also In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605–06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). Here, DWCC and Filegonia's subcontract recited that "[t]he arbitration rights set forth herein shall be specifically enforceable under the Federal Arbitration Act, 9 U.S.C. 1, et seq., the parties agreeing that the transactions contemplated hereunder will have an effect on interstate commerce." This Court will presume that "a party who signs a contract knows its contents." *In re ReadyOne Indus., Inc.*, 294 S.W.3d at 769 (quoting *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (per curiam)). We thus conclude that this defense to arbitration is without merit.

### 2.    Unconscionability

As its second defense, Filegonia argued that the arbitration provision is unconscionable. While arbitration agreements are not inherently unconscionable, an

unconscionable arbitration agreement will be unenforceable under Texas law. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677–78 (Tex. 2006) (orig. proceeding).

Unconscionability may be either procedural or substantive. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678. In general, procedural unconscionability refers to the circumstances surrounding the agreement to the arbitration provision, and substantive unconscionability concerns the fairness of the arbitration provision itself. *Id.* The basic test for substantive unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757.

Affirmative defenses to arbitration, including unconscionability, must attack the arbitration provision specifically and not the contract as a whole. *See Royston*, 467 S.W.3d at 500–01. If the defense attacks the contract in its entirety, the issue is for the arbitrator and not the court. *See id.*; *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 647–48.

Filegonia cited four bases for its unconscionability argument: (1) no mutuality of obligation; (2) the subcontract's notice provision for claims; (3) the subcontract's limitation of liability provision for claims involving the City; and (4) DWCC's alleged noncompliance with the subcontract's mediation provision.

### a. No Mutuality of Obligation

Filegonia first contends that there is no mutuality of obligation because the arbitration provision provides that any dispute between DWCC and Filegonia "shall at

7

[DWCC's] sole option and discretion be resolved by arbitration." The Texas Supreme Court, however, has already addressed this issue in *Royston*. *See* 467 S.W.3d at 501. In *Royston*, the high court concluded that "an arbitration agreement that requires arbitration of one party's claims but does not require arbitration of the other party's claims is not so one-sided as to be unconscionable." *See id.* (citing *In re FirstMerit Bank*, 52 S.W.3d at 757–58). We thus find this sub-point unpersuasive.

### b.     Notice, Limitation of Liability, and Mediation Provisions

We address the next three points together. First, Filegonia complains that the subcontract provided that Filegonia had to submit "Claims," as defined by the subcontract, to DWCC "in writing within 72 hours after the occurrence of the event giving rise to the Claim, or, if earlier, in advance of the time required for submitting any such Claim under the Contract Documents, or such longer period required by law." The subcontract explained that the purpose of this notice was to allow DWCC "the opportunity to investigate claims and mitigate potential damages before they are incurred." Filegonia contends that this provision is unconscionable because it "severely limits" its rights and only applies to Filegonia and not DWCC.

Second, Filegonia argues that the subcontract's limitation of liability is unconscionable. This provision provides that it is "expressly understood and agreed" that "[DWCC] shall never be liable to [Filegonia] to any greater extent than Owner is liable to [DWCC]." Filegonia contends that this unfairly limits DWCC's liability to the City of Pharr, if any, despite any violations of the contract DWCC may have committed to the detriment of Filegonia.

8

Third, Filegonia contends that DWCC did not comply with the mediation requirement under the subcontract whatsoever. The mediation provision expressed that Filegonia agreed to "submit any dispute to mediation and to negotiate in good faith to reach an agreement with respect to the dispute prior to filing a demand for arbitration." At the hearing on the motion to compel, DWCC explained that it had attempted mediation but had to stop the proceeding when the mediator admitted that he might have a conflict of interest in the case. No subsequent attempts at mediation were made. Filegonia contends that DWCC's failure to mediate these disputes should bar it from invoking the subcontract's arbitration provision.

All of these points, however, deal with the subcontract as a whole, not with the arbitration provision itself. *See Royston*, 467 S.W.3d at 500–01; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. Because Filegonia is attacking the subcontract in its entirety and not the arbitration agreement specifically, Texas law declares that these issues are for an arbitrator to resolve, not a trial court. *See id.* In conclusion, we find Filegonia's affirmative defense of unconscionability to be unconvincing.

### 3. Lack of Consideration/Illusory Promise

All contracts, including arbitration agreements, must be supported by consideration. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676. Consideration is a bargained for exchange of promises or performances between contracting parties. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex. 2008). It "consists of benefits and detriments—the detriments must induce the parties to make the promises[,] and the promises must induce the parties to incur the detriments." *Id.* (cleaned up). When

9

the consideration consists of mutual promises between the parties, the agreement is a "bilateral contract"—one in which "there are mutual promises between two parties to the contract, each party being both a promisor and a promisee." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009).

"When illusory promises are all that support a purported bilateral contract, there is no contract." *Id.* at 301 (quoting *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644–45 (Tex. 1994)). Promises are illusory and unenforceable when they fail to bind the promisor, who retains the option of discontinuing performance. *Royston*, 467 S.W.3d at 505. In general, if a party has the unlimited right to terminate an agreement and avoid its promised obligation without prior notice, the agreement is considered illusory and is unenforceable due to its lack of mutual consideration. *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 419 (Tex. App.—Dallas 2011, pet. denied) (citing *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App.—Corpus Christi–Edinburg 2003, orig. proceeding)).

Filegonia does not argue that the entire subcontract lacks consideration; rather, it argued that only the arbitration provision in the subcontract lacks consideration because DWCC has the option to decide whether claims within the scope of the clause should be arbitrated. However, a plaintiff "cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) (orig. proceeding). Here, Filegonia filed suit against DWCC to enforce the subcontract and recover alleged monies owed—thus acknowledging that a contract with consideration exists. "And an arbitration provision that is part of a larger underlying contract may be supported by the consideration supporting the underlying contract." *Royston*, 467 S.W.3d at 505*; see Rachal*, 403 S.W.3d

10

at 847–48 (rejecting an attempt to invalidate an arbitration provision based on lack of consideration because that party had accepted benefits under the agreement and was suing to enforce its terms). We conclude that there was no illusory promise made by DWCC to Filegonia.

### 4. Conclusion

We find Filegonia's asserted defenses against arbitration—lack of interstate commerce, unconscionability, and lack of consideration—unpersuasive. We sustain this issue.

### III.    REQUEST FOR STAY

By its second issue, DWCC contends the trial court erred when it denied its motion to stay litigation pending litigation.[3] We agree. Section 3 of the FAA, entitled "Stay of proceedings where issue therein referable to arbitration," provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Under Section 3, a stay is not dependent on a party's submission of the dispute to an arbitration association. *Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 142–43 (Tex. App.—Tyler 2008, no pet.);

---

[3] We disagree with Filegonia that the "Agreed Order Partially Staying Litigation Pending Interlocutory Appeal" rendered this issue moot. It does not. The issue before us requested a stay of litigation pending arbitration of the case; the agreed order stayed litigation pending the resolution of this appeal. Accordingly, we address the issue.

11

*Feldman/Matz Ints., L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 888 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). Thus, the trial court was required to grant DWCC's motion to stay litigation if (1) a written arbitration agreement existed and (2) any issue involved in the litigation was referable to arbitration under the agreement. *See* 9 U.S.C. § 3. Because we held in the previous section that the parties have a valid arbitration agreement and that the dispute at hand is encompassed by the arbitration provision, the trial court must stay all proceedings pending that arbitration. *See Rapid Settlements, Ltd.*, 251 S.W.3d at 142–43. We sustain this issue.

## IV. CONCLUSION

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.

LETICIA HINOJOSA
Justice

Delivered and filed on the
30th day of August, 2022.

12